The ALLEN COUNTY COUNCIL, Jack McComb, Paul Brumbaugh, Richard Summers, Sandra Houlihan, Dr. Phillip Schubert, Jack Donifon, Janice Bradtmiller, and Linda Bloom, Allen County Auditor, Appellants,

v.

The ALLEN CIRCUIT COURT, 38TH JUDICIAL DISTRICT, Appellee.

No. 02S00–8912–MF–926.

Supreme Court of Indiana.

Jan. 29, 1990.

H. Charles Winans, Garrett, for appellants.

Harry W. Scott, M. Bruce Scott, DeVoss, Scott, Johnson & Baker, Decatur, for appellee.

## APPEAL IN RE MANDATE OF FUNDS

GIVAN, Justice.

On September 7, 1989, the Honorable Thomas L. Ryan, Judge of the Allen Circuit Court, issued two orders mandating payment of certain funds. In cause number 672, the court ordered increases of salary for its Administrator/Director of Court Services/Bailiff and also ordered that its secretary be reclassified from a part-time position to a full-time position. In cause number 673, the court ordered additional public defenders with increases of salary as to each and sought additional assistants in the probation department with salary increases as to each.

Under the provisions of Ind.R.Tr.P. 60.5, the cases were consolidated and certified to this Court for appointment of a special judge to try the orders for mandate of funds. On September 21, 1989, this Court appointed the Honorable Richard W. Sand, the regular judge of the Kosciusko Circuit Court, as special judge. The trial was conducted on November 28 and 29, 1989.

At the outset of his findings, Judge Sand correctly observed that these mandates arise out of a situation embarrassing to both the mandating judge and the appellants with fault lying in neither. The appellant councilmen have the unenviable responsibility of distributing available funds among the various branches of county government. The trial judge has the responsibility of supervising the functioning of the circuit court. It is essential to that function that competent personnel be employed. In order to effectuate such employment, salaries must be comparable to salaries paid to persons of corresponding ability in that community.

Although the courts in any given county are thought of as county courts, they are in reality state courts whose judgments are enforceable throughout the entire state, and a more realistic view is that the courts in fact are more of a state function than a county function. Notwithstanding this reality, we have clung tenaciously to the archaic method of funding at the local level, which has given rise to a disparity of funds available from one jurisdiction to another.

In this setting, it devolved upon Judge Sand to come to a decision which would sustain the circuit court in its necessary functions while at the same time attempting to minimize the inevitable impact upon the county officials. In this appeal, we feel the same responsibility.

In cause number 672, Judge Sand found, from the evidence, that the office of Circuit Court Administrator/Director is an unusual office in that the person in that position must perform a bewildering array of duties, which in most courts with metropolitan caseloads are performed by two or even three different people. The duties performed are necessary to the functioning of the court.

Thus, the question to be determined is the reasonableness of the salary to be paid to the person holding such position. Judge Sand found that the appellants attempted to raise a comparison of similar salaries but the comparison did not hold because the job descriptions of the positions presented were not comparable to that of the Allen Circuit Court Administrator/Director. Judge Sand found that given the duties required of the Administrator/Director, the salary requested by Judge Ryan was, if anything, on the low side rather than high.

Judge Sand observes that the salary requested by Judge Ryan was consistent with an earlier recommendation of the county's personnel director, whose duties are to classify and evaluate the worth of job positions within Allen County government. Thus, Judge Sand found that the mandate of Judge Ryan was entirely prop-

er in this regard. We join him in that observation.

Judge Sand did modify Judge Ryan's mandate as to retroactive application to the year 1989. Judge Sand indicates that because the mandate order was entered September 7, 1989, to avoid the appearance of retroactivity the mandate for the 1989 salary should be amended so as to prorate the mandated increase over the year and limit it to the period subsequent to the September 7, 1989 order.

Judge Sand then ordered that the salary for the Administrator/Director for the year 1989 be fixed in the sum of $33,921, which represents a $1,707 increase over the $32,214 previously appropriated. Judge Sand points out that the increase is one-third of the total increase of $5,122 as sought in the mandate and that the salary for the year 1990 should be fixed at the sum of $38,818. We agree with Judge Sand's modification of the original order.

■ As to the secretary for the circuit judge, no specific sum for salary was mandated. The mandate only asked that the secretary's position be reclassified from part-time to full-time. It was pointed out that she does in fact do full-time work but has been carried as a part-time employee, apparently in order that the county might avoid paying benefits that inure to a full-time employee but are not available to a part-time employee. It should be obvious to any observer that to engage in such a subterfuge to the detriment of a person who actually is doing full-time work is grossly unfair to that person. The mandate in that regard was entirely proper.

■ As to cause number 673, the mandate sought additional public defenders with increases of salary as to each. The mandate also sought additional assistants in the probation department with salary increases to each. The evidence shows that the appropriation for the Chief Public Defender for the year 1990 was $22,208. The mandate ordered that the salary be raised to $30,000. Prior to the mandate, the office of Public Defender had positions for fourteen assistant public defenders, who ranged in salary from $10,842 to $14,-976. The mandate ordered that four assistant positions be added, making a total of eighteen positions, and to establish the salary for each at $22,178 for the year 1990. In addition, the mandate ordered that the Public Defender's secretary for the year 1990 receive a salary of $12,818.

The mandate also ordered that an additional probation officer be added at a salary of $19,890, a figure which fell within the low range of the present probation officers' salaries. The mandate also established an additional probation officer's secretary at a salary of $12,818.

Evidence in this case clearly supports Judge Ryan's mandate as to each of these salaries. It clearly was established that the going rate for persons engaged in like positions in the Fort Wayne community fell well within the figures established by the mandate. Where, as here, the evidence clearly establishes that the mandated salary and position increases are reasonably necessary for the operation of the court and well within the framework of the judiciary, the mandate will be sustained. *See* *Vigo Cty. Council v. Vigo Superior Court* (1979), 272 Ind. 344, 397 N.E.2d 969.

There is no doubt that the offices of the Public Defender and the Probation Department form integral parts of the workings of the court and are necessary to the fulfillment of its constitutional and statutory duties. Evidence showed that both offices were overburdened with an excessive workload, and in fact if they did not receive some relief, they were threatened with an exodus of their staffs to greener pastures.

■ The mandate also ordered that if the Allen County Council failed to establish the offices and the salaries as ordered, Linda Bloom, the Allen County Auditor, should pay from unappropriated funds such sums as may be necessary to fulfill the intent of the mandate. Appellants argue that such a mandate requires Linda Bloom to violate Ind.Code §§ 36–2–3–6 *et seq.* and 36–2–6–2 *et seq.*

They also claim that the trial court is attempting to circumvent the procedures of law required by Ind.Code § 36–2–5–2(b),

which provides: "The county fiscal body shall appropriate money to be paid out of the county treasury, and money may be paid out of the treasury only under an appropriation made by the fiscal body, except as otherwise provided by law."

■ The power of the courts to mandate funds for their operation has been clearly established for many years. *See In re Ripley Cir. Ct.* (1986), Ind., 495 N.E.2d 696; *Vigo Cty. Council, supra; Lake Co. v. Lake Co. Ct.* (1977), 266 Ind. 25, 359 N.E.2d 918. When the mandate has been issued and approved by this Court, the county council has no choice other than to comply with the mandate. Their action in so doing is ministerial.

Appellants are correct in their observation that the County Auditor serves only as a clerk of the county council in paying out county funds. The trial court clearly has the power under the guidelines set down in the cases cited above to issue the mandate. The appellants are also correct in that if the council does not comply with the mandate they are subject to judicial sanction.

However, that fact does not prevent the court from ordering the auditor to carry out the mandate notwithstanding the potential necessity of enforcing sanctions against the mandated council. The auditor's action in response to the court's order is not contrary to statute but rather is a performance of her duty to dispense county funds.

Appellants claim that the finding of the trial court supporting the mandate does not properly consider that the county is already spending more money than it is taking in and that the mandate will cause a fiscal impact of $269,000 on the judicial budget. The judicial budget requested for 1990 is $902,808. The total budget estimate for the fiscal year 1989–90 for the entire county is $34,071,100. Thus the judicial budget is less than three percent of the total budget. Given the small percentage represented by the expenditure required by the mandate, it hardly can be said to present an insurmountable problem for the council and the auditor.

After hearing evidence and making a decision on the circuit court mandate, the trial judge addressed the question of fees for the attorneys representing the circuit court. After considering the affidavit as to attorney fees filed by the counsel, the trial judge observed that an allowance for fees must be made because the circuit court, as an organ of government, incurred attorney fees in prosecuting the action, which must be paid. Obviously the Allen County government will be required to pay the attorney fees for both sides of this litigation.

■ The trial judge observed that no evidence was submitted questioning the services rendered or the value thereof by appellee's counsel. This Court observes that facts such as the number of employees involved in Allen County's court processes, the salaries paid therefor, and the volume of work required to be done by those personnel, although locally known or easily discerned, pose a logistics problem for attorneys who have the burden of proof as to those facts and the necessity for the increase in personnel and salaries in order to facilitate the work of the court.

The transmission of this case to this Court pursuant to Ind.R.Tr.P. 60.5 includes numerous exhibits and seven (7) ninety-minute tapes of evidence heard by the trial court. There is nothing in this record to indicate that the trial judge abused his authority in setting the attorney fees in this case, which was a duty required of him at the close of the case. *Vigo Cty. Council, supra.*

The judgment of the trial court modifying and approving the mandate of the Allen Circuit Court is affirmed.

SHEPARD, C.J., not participating.

DeBRULER, PIVARNIK and DICKSON, JJ., concur.